IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE:                                   )
                                         )       Chapter 11
VISION POINT OF SALE, INC.               )       Case No. 09-40250
                                         )       Judge Cox
        debtor/debtor in possession      )

## FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL

THIS MATTER COMING ON TO BE HEARD on the Emergency Motion for Use Cash Collateral filed by VISION POINT OF SALE, INC., the above captioned debtor and debtor in possession herein ("**Debtor**"), due and proper notice having been given under the circumstances, and the Court being fully advised in the premises:

THE COURT HEREBY FINDS THAT:

A.      On October 26, 2009 (the "*Petition Date*"), the Debtor filed a petition for relief under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*") in the United States Bankruptcy Court for the North District of Illinois, Eastern Division (the "*Bankruptcy Court*"). Since the Petition Date, the Debtor has continued in the management and operation of its business as a debtor in possession pursuant to sections 1107 and 1108. No trustee or committee has been appointed in the Debtor's chapter 11 case (the "*Chapter 11 Case*").

B.      On October 29, 2009, this Court entered that certain Interim Order Authorizing Use of Cash Collateral [Docket No. 11] (the "*Interim Order*") authorizing the Debtor to use cash collateral of PAF Investments LLC (the "*Lender*"), as successor and assigns of MB Financial Bank, N.A. ("**MB Financial**") through November 30, 2009, pursuant to the terms of a budget

CH01/ 25418549.7 -1-

attached as Exhibit A to the Interim Order and setting a hearing for November 19, 2009 to consider entry of a final order authorizing the Debtor's use cash collateral.

C. On November 23, 2009, this Court entered that certain Second Interim Order Authorizing Use of Cash Collateral [Docket No. 27] (the "**Second Interim Order**") authorizing the Debtor to use cash collateral of PAF Investments LLC (the "**Lender**"), as successor and assigns of MB Financial Bank, N.A. ("**MB Financial**") through December 15, 2009, pursuant to the terms of a budget attached as Exhibit A to the Second Interim Order and setting a final hearing for December 10, 2009 to consider entry of a final order authorizing the Debtor's use cash collateral.

D. Under the Second Interim Order, the Debtor, any Committee formed in the Chapter 11 case and any other party in interest had until the close of business on December 9, 2009 to commence any appropriate adversary proceeding in order to challenge, among other things, the validity, extent priority, avoidability, perfected nature or enforceability of the Prepetition Indebtedness and the claims, liens and security interests of the Lender in the Prepetition Collateral (as defined below) and to contest the releases and waivers contained in the Second Interim Order. No such adversary proceeding was commenced prior to the December 9, 2009 deadline.

E. The Bankruptcy Court has jurisdiction of the Chapter 11 Case and the parties and the properties affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. This matter is a "core" proceeding as defined in 28 U.S.C. §§157(b)(2)(A), (B), (K), and (M). Venue of the Chapter 11 Case and this matter in this Bankruptcy Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

F. The (i) Business Loan Agreement dated November 19, 2007 among the Debtor and Lender (the "**Loan Agreement**"), (ii) Promissory Note dated November 19, 2008 made by

Debtor in favor of Lender in the principal amount of $2,500,000 (the **"$2.5 Million Note"**) and (iii) Promissory Note dated November 19, 2008 made by Debtor in favor of Lender in the principal amount of $1,000,000 (the **"$1 Million Note"** and collectively with the $2.5 Million Note, the **"Notes"**) constitute valid and binding obligations of the Debtor enforceable in accordance with their terms without any offsets, defenses or counterclaims, and that the Debtor was and is truly and justly indebted to the Lender under the Notes, as of the filing in this case, in the principal amount of $2,731,297.45 plus additional interest, fees and costs, along with all other amounts which have or may accrue under the Notes, the Loan Agreement or any other document executed in connection therewith (the **"Prepetition Indebtedness"**).

G. Pursuant to that certain Commercial Security Agreement dated November 19, 2007 (the **"Security Agreement"**) executed by the Debtor in favor of the Lender, the Lender holds valid, binding, enforceable and properly perfected first priority liens on substantially all of the Debtor's assets including, without limitation, all personal and fixture property of every kind and nature, including (without limitation) all accounts, goods, inventory, raw materials, finished goods, work in process, equipment, vehicles, furniture and fixtures, software and computer programs, investment property, deposit accounts, chattel paper, electronic chattel paper, instruments, documents, letter of credit rights, proceeds of letters of credit, supporting obligations, notes, commercial tort claims, general intangibles, payment intangibles and insurance policies, whether now existing or hereafter arising or acquired, and wherever now or hereafter located, together with all additions and accessions thereto, substitutions for, and replacements, products and proceeds therefrom, and all of the Debtor's books and records and recorded data relating thereto (collectively, the **"Prepetition Collateral"**), to secure payment of the Prepetition Indebtedness which liens are not subject to any claims, counterclaims, defenses,

setoff, recoupment or deduction.

H.  The Debtor has requested that the Lender consent to the Debtor's use of cash collateral and the Lender is willing to consent to the Debtor's use of cash collateral on the basis of the terms and conditions provided herein. The Lender is relying upon the terms and conditions and protections providing herein in so consenting.

I.  The agreements and arrangements described and authorized in this Order have been negotiated at arm's-length with all parties represented by counsel, are fair and reasonable under the circumstances, and are enforceable in accordance with their terms. The Debtor and the Lender are acting in good faith with respect to the use of cash collateral and the agreed terms and conditions for such use.

J.  Good cause has been shown for entry of this Order. Among other things, entry of this Order will preserve and maintain the assets of the Debtor and its estate and help maximize the realization upon such assets. Accordingly, entry of this Order is in the best interest of the Debtor, its creditors, and its estate. The terms and conditions of the use of cash collateral authorized hereby are fair and equitable under the circumstances.

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.  <u>Use of Cash Collateral</u>. The Debtor is authorized, subject to the conditions set forth in this Order, to use cash, including cash collateral, to make disbursements as delineated in the budget attached hereto as Exhibit "A" (the "***Budget***"), for the period December 9, 2009 through and including December 18, 2009, plus a variance of 10%, unless the Lender consents in writing to a greater variance.

2.  <u>Replacement Liens, Priority Claim</u>. In addition to the existing rights and interests of the Lender in cash collateral and for the purpose of attempting to provide adequate protection

for the interests of the Lender in its prepetition collateral, including any diminution in value which results from the Debtor's use of cash collateral hereunder, and the imposition of the automatic stay, (a) the Lender is hereby granted, as security to the extent of the Debtor's actual use of cash collateral and any diminution of the value of the Lender's interest in the Prepetition Collateral, a valid perfected and enforceable security interest (the "**Replacement Liens**") in and upon all of the assets of the Debtor, both tangible and intangible, real and personal, including without limitation, accounts, inventory, machinery and equipment, real property, chattel paper, intellectual property, licenses, deposit accounts, money, negotiable collateral, securities, and general intangibles (but not including claims or causes of action arising under Sections 544, 547, 548 and 553 of the Bankruptcy Code), and all improvements, additions and extensions thereto, all replacement thereof, all books and records with respect thereto and all products and proceeds of the foregoing which are now or hereafter become property of this estate, specifically including any proceeds of the foregoing deposited into accounts whether opened by the Debtor before or after the filing of this case and the accounts themselves (the "**Post-Petition Collateral**", and collectively with the Prepetition Collateral, the "**Collateral**"); and (b) the Lender is granted administrative claim status equivalent in priority to a claim under section 364(c)(1) of the Bankruptcy Code, on a dollar-for-dollar basis measured by the diminution in the Lender's interests in the Prepetition Collateral from and after the Petition Date, which administrative claims shall, among other things, have priority over all other costs and expenses of the kind specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), or 726 of the Bankruptcy Code; and (c) to the extent of any diminution in the Lender's interests in the Prepetition Collateral from and after the Petition Date, the Lender shall be granted a claim entitled to priority pursuant to section 507(b) of the Bankruptcy Code in an amount equal to such

diminution in value. The Debtor shall execute any documents that may be reasonably required by Lender to evidence the post-petition interests granted herein.

3. **Loan Documents Valid and Binding**. The Loan Agreement, the $2.5 Million Note, the $1 Million Note and the Security Agreement, and all other documents executed in connection therewith (collectively, the "**Loan Documents**") constitute valid and binding obligations of the Debtor enforceable in accordance with their terms without any offsets, defenses or counterclaims and no portion of the Loan Documents are subject to avoidance or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law;

4. **Prepetition Indebtedness**. The Debtor is liable to the Lender with respect to the Prepetition Indebtedness and such Prepetition Indebtedness, plus any additional fees, costs and expenses, shall constitute an allowed claim against the Debtor.

5. **Enforceability of Prepetition Liens**. The Lender holds valid, binding, enforceable and properly perfected first priority liens and security interests the Prepetition Collateral, which liens are not subject to any claims, counterclaims, defenses, setoff, recoupment or deduction, and which are otherwise unavoidable and not subject to avoidance or subordination pursuant to any provisions of the Bankruptcy Code or applicable nonbankruptcy law.

6. **Waiver of Surcharge**. Nothing in this Order shall constitute the consent by the Lender to the imposition of any costs or expenses of administration or other charge, lien, assessment or claim against the Lender, its claims or the Collateral, and Debtor hereby waives any right to surcharge the Collateral, or to assert or make a claim for any costs or expense of administration (except for the payment of U.S. Trustee fees incurred pursuant to 28 U.S.C. Section 1920) or other charge, lien or assessment against the Lender, its claims or the Collateral under 11 U.S.C. §§ 105, 506(c), 552 or otherwise.

7. <u>Covenants</u>. The Debtor's use of cash collateral shall in all respects be limited by the terms of this Order including, without limitation, each of the following:

(a) the Debtor shall notify the Lender of any material adverse deviation of the Debtor's financial performance from that set forth in the Budget within three (3) business days after occurrence of such material adverse deviation;

(b) the Debtor will provide to the Lender by the Wednesday of the following week, a report reflecting the Debtor's actual cash inflows and outflows for such preceding week as compared against the Budget, the percentage variance of actual cash inflows and outflows from those set forth on the Budget, and such other detail and information as may be reasonably requested by the Lender;

(c) the Debtor is required to maintain and pay premiums for insurance to cover all of its assets from fire, theft and water damage and to provide Lender with proof of such;

(d) the Debtor will permit the Lender to inspect, upon reasonable notice, within reasonable hours, the Debtor's books and records and, upon reasonable request, make available to the Lender evidence of that which constitute its collateral or its proceeds;

(e) the Debtor will permit the Lender and its agents, including without limitation its accountants and appraisers, with reasonable access to the Debtor's inventory, equipment, books and records, to inspect and appraise, upon reasonable notice and within reasonable hours;

(f) the Debtor shall not, without the prior written consent of the Lender, (i) incur any debt for additional money, including any request under section 364 of the Bankruptcy Code for a debtor-in-possession credit facility, (ii) grant or permit the creation of a lien or security interest in any of the Debtor's property other than as provided herein, (iii) seek to use or use cash collateral in a manner inconsistent with this Order, or (iv) seek any amendment or modification of this Order;

(g) The Debtor shall conduct an auction for the sale of substantially all of its assets in accordance with the following terms and conditions:

   (i) The auction shall be conducted and the hearing before the Bankruptcy Court to approve the sale of the Debtor's assets shall occur on or before December 17, 2009.

   (ii) The sale of the Debtor's assets shall be closed on or before the close of business on December 18, 2009.

   (iii) The Lender shall have the right to credit bid all or a portion of the amount of the indebtedness owing by the Debtor to the Lender, including the

Prepetition Indebtedness and any amounts or claims which accrue postpetition.

(iv) All proceeds generated from the sale of the Debtor's assets shall be directly and immediately paid to the Lender.

8. <u>Events of Default</u>. The occurrence of any one or more of the following events shall constitute an "***Event of Default***" under this Order:

(a) the entry of an order converting the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code, terminating the Debtor's authority to conduct its business, or appointing a trustee;

(b) the granting of a lien to any party on any of the Debtor's assets that is senior or pari passu to any of the liens or security interests of the Lender;

(c) any modification or amendment of the Lender's rights under this Order;

(d) The hearing to approve the sale of substantially all of the Debtor's assets shall not have occurred by December 17, 2009;

(e) Failure of any Debtor to comply with any term, condition or covenant contained in this Order if not cured (if subject to cure) on or prior to three (3) business days after written notice by the Lender is delivered to the Debtor and its counsel.

(f) commencement of any adversary proceeding, contested matter or other litigation against the Lender;

(g) the Debtor uses or seeks to use cash collateral for any purpose or in a manner other than as permitted in this Order and in the Budget;

(h) the Debtor's use of cash collateral for any item not included on the Budget or with respect to any permitted disbursements delineated in the Budget in excess of 110% of the cumulative amount set forth in the Budget;

(i) The Debtor's selling, leasing or otherwise disposing of the Collateral or agreeing or seeking approval to do any of the foregoing, without the prior consent of the Lender, or

(j) The dismissal of the Chapter 11 Case.

9. <u>Remedies</u>. In the event of the occurrence of an Event of Default and the Lender providing notice of such Event of Default to Debtor's counsel, the Debtor's right to use cash collateral shall immediately cease and the Debtor shall be, and is prohibited from, using cash collateral absent the entry of a further order of the Bankruptcy Court after notice and a hearing.

CH01/ 25418549.7 -8-

Upon the occurrence of an Event of Default, the Lender shall be entitled to (and the Debtor hereby stipulates to) a hearing for relief from the automatic stay on an emergency basis within five business days' of the Lender filing a motion for relief from the automatic stay. The Lender's delay or failure to exercise rights and remedies under the Loan Documents, applicable law, or this Order shall not constitute a waiver of the Lender's rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed by the Lender, as the case may be. Nothing herein shall prevent the Lender from seeking relief from the automatic stay or seeking to terminate the use of cash collateral at any time.

10. <u>Termination of Right to Use Cash Collateral</u>. The Debtor's right to use cash collateral under the terms of this Order shall automatically terminate without the need for further Bankruptcy Court involvement upon the earlier to occur of (i) the occurrence of an Event of Default and Lender providing notice to Debtor's counsel of such Event of Default, or (ii) the close of business on December 18, 2009, unless the Lender and Debtor agree in writing to further extensions of this Order.

11. <u>Releases; Validation of Prepetition Liens; Investigatory Period</u>. The Debtor on behalf of itself and its estate hereby (a) releases and discharges the Lender and MB Financial and their affiliates, agents, attorneys, officers, directors, shareholders, advisors and employees, including any predecessors and assigns, from any and all claims and causes of action arising out of, based upon or related to the Loan Documents (including without limitation the declaration of events of default under the Loan Documents and any other action taken or not taken by the Lender or MB Financial) or the relationship of any of the foregoing persons or entities with the Debtor, in each case prior to the entry of this Order; and (b) waives any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity,

perfection, priority, enforceability, and nonavoidability (under sections 510, 544, 545, 547, 548, 550, 552 or 553 of the Bankruptcy Code or otherwise) of the Prepetition Indebtedness and the security interests in and liens on the Prepetition Collateral in favor of the Lender. The release, discharge, and waivers set forth above will be deemed effective upon entry of this Order and the Prepetition Indebtedness and the liens on and security interests in the Prepetition Collateral in favor of the Lender shall be deemed to be valid, perfected, enforceable, and nonavoidable upon the entry of this Order.

12. This Order is effective as of the date of its entry. No modification of this Order shall deprive the Lender of adequate protection of its interest in the Debtor's property

13. In the event that any or all of the provisions of this Order are hereafter modified, amended, vacated or stayed, such modification, amendment, vacation or stay shall not affect the validity or enforceability of any provisions of this Order prior to such time.

14. This Order shall be binding on all parties in interest in this case and their respective successors and assigns, including any trustee which may be appointed in this case.

15. This Court shall retain jurisdiction over all matters relating to the interpretation, implementation, and enforcement of this Order.

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

SO ORDERED this 15th day of December 2009 AN

*Jacqueline P. Cox*
J. Cox
_____
HONORABLE JACQUELINE P. COX
UNITED STATES BANKRUPTCY JUDGE

**DEBTOR'S COUNSEL:**
Scott R. Clar, Esq.
(Atty. No. 06183741)
David K. Welch, Esq.
(Atty. No. 06183621)
Jeffrey C. Dan, Esq.
(Atty. No. 06242750)
Crane, Heyman, Simon, Welch & Clar
135 South LaSalle Street, Suite 3705
Chicago, IL 60603
TEL: (312) 641-6777
FAX: (312) 641-7114

**LENDER'S COUNSEL**
Jeffrey M. Schwartz
(Atty No. 6209982)
Andrew E. Weissman
(Atty No. 6273246)
DRINKER BIDDLE & REATH LLP
191 North Wacker Drive, Suite 3700
Chicago, Illinois 60606
TEL: (312) 569-1000
FAX: (312) 569-3000

# EXHIBIT A

| | 13-Nov | 20-Nov | Week Ending 27-Nov | 4-Dec | 11-Dec |
|---|---|---|---|---|---|
| Beginning Inventory | 1,893,136 | 1,864,790 | 1,861,534 | 1,859,584 | 1,846,954 |
| Plus Purchases | 17,415 | 16,200 | 26,556 | 26,556 | 25,000 |
| Less Est COGS | (45,761) | (19,456) | (28,506) | (39,186) | (38,466) |
| Ending Inventory | 1,864,790 | 1,861,534 | 1,859,584 | 1,846,954 | 1,833,488 |
| | | | | | |
| Beginning AR | 804,217 | 686,082 | 634,222 | 644,971 | 615,828 |
| Less Collections | (189,000) | (90,000) | (56,626) | (125,718) | (8,140) |
| Plus Sales | 70,865 | 38,140 | 67,375 | 96,575 | 88,616 |
| Ending AR | 686,082 | 634,222 | 644,971 | 615,828 | 696,303 |
| | | | | | |
| Beginning Cash | 11,504 | 104,977 | 85,367 | 63,876 | 142,838 |
| Plus Deposits | 189,000 | 90,000 | 56,626 | 125,718 | 8,140 |
| Less Expenditures | (95,527) | (109,610) | (78,118) | (46,756) | (96,645) |
| Ending Cash | 104,977 | 85,367 | 63,876 | 142,838 | 54,332 |
| | | | | | |
| Total Ending Cash Collateral | 2,655,849 | 2,581,123 | 2,568,430 | 2,605,619 | 2,584,124 |
| | | | | | |
| Expenditures | | | | | |
| Service Procurement | 12,100 | 12,100 | 15,000 | 15,000 | 15,000 |
| Hardware Procurement | 17,415 | 16,200 | 26,556 | 26,556 | 25,000 |
| Group Insurance | - | | 10,000 | | |
| Operating Supplies & Services | 1,500 | 1,650 | 200 | 200 | 200 |
| Insurance | 6,000 | | | | |
| Autos | - | | | | |
| Software | 4,000 | | | | 4,000 |
| Communications | - | | | | |
| Rent | - | | | | |
| Freight | 5,000 | 15,000 | 5,000 | 5,000 | 5,000 |
| Utilities | 3,000 | | | | |
| Other | 1,950 | 300 | | | |
| Payroll & Taxes | - | 64,360 | 21,362 | | 47,445 |
| Commissions & Taxes | 44,562 | | | | |
| | | | | | |
| Total Expenditures | 95,527 | 109,610 | 78,118 | 46,756 | 96,645 |